IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**COREY ANTOINE JONES, JR.**                                               **PETITIONER**

**V.**                     **CIVIL ACTION NO. 3:24-CV-00217-GHD-JMV**

**STATE OF MISSISSIPPI, et al.**                                        **RESPONDENTS**

**MEMORANDUM OPINION AND ORDER**

Petitioner Corey Antoine Jones, Jr., has filed a *pro se* habeas petition pursuant to 28 U.S.C. § 2254 challenging his State-court conviction(s) and sentence(s) for exploitation of a child. Having considered the submissions of the parties, the State-court record, and the law applicable to Petitioner's claims, the Court finds that the petition should be denied, for the reasons that follow.

**Relevant Facts**

The Mississippi Court of Appeals accurately summarized the facts of the case as follows:

Hernando Police Detective Michael Hansbro worked as an undercover agent tasked with investigating child exploitation cases. On multiple dating websites, he would often use the persona of "Amy," an underaged girl. In an effort to thwart child exploitation, the website "Plenty of Fish" allowed the detective to maintain his undercover profile even if other users reported him as underage. A 911 dispatcher for the Department would often aid the detective by providing him pictures from her youth and making video recordings, phone calls, or even video-chatting using FaceTime when needed.

One day, Detective Hansbro received a message from Corey Jones on the Plenty of Fish profile. After exchanging a few messages, "Amy" disclosed to Jones that she was "younger than her profile." Jones asked if "Amy" was "under 17," to which she replied with a thumbs-up emoji. Jones then responded, "K," and the conversation ended.

Two days later, on the evening of August 18, 2020, Jones again initiated conversation with "Amy" asking what she was doing that night. The conversation continued for some time and eventually resulted in the following exchange:

    Jones:         Want some company? Lol

| | |
|---|---|
| "Amy": | Thought I was too young for ya. |
| Jones: | Will you get in trouble? |
| "Amy": | Long as my mom doesn't know. Lol. She would have my little 14 year old ass. |
| Jones: | Well how would you sneak out? I'm in an 18-wheeler. |

…

| | |
|---|---|
| Jones: | Lol and where would I part this big think [sic] so that they won't see me? |
| "Amy": | I could walk up the road to the gas station. U can't get an 18-wheeler in my trailer park. |

After agreeing to meet at a gas station in Hernando, Jones gave "Amy" his phone number and asked her to send him "some nudes" to prove that he could trust her. Instead, Detective Hansbro instructed the 911 dispatcher to have "Amy" send Jones a voice message. Still apprehensive, Jones persisted in his pursuit of using "Amy" to send "a sexy message" of herself to him. At that time, the conversation moved from the dating app over to text messages on the parties' respective cell phones.

Throughout the course of the text chain, Jones incessantly asked "Amy" to send him nude photographs. Each time "Amy" declined. Jones then asked her to video-chat him for five seconds. "Amy" agreed to do so but without the video on, claiming her mother "smashed" her phone and "bust[ed]" the camera. The 911 dispatcher played the role of the girl again:

| | |
|---|---|
| Jones: | So how come you just can't send a nude? |
| "Amy": | Cause wouldn't you rather see it in person? |
| Jones: | I would rather see it in person but I gotta trust you first. All you gotta do is send one and I'll delete it then come see you. |
| "Amy": | Well how am I going to trust you if you don't trust me. |

…

| | |
|---|---|
| Jones: | That's because you're young. I can't do nothing with your pictures or else I'll be in trouble. I can't do nothing with your pictures because it would be illegal and I would go to jail for a long time. |

2

>The text conversation continued and Jones asked "Amy" if she was going to "sneak out the window" to meet him at the gas station. During the hours of messaging, "Amy" told Jones that her "mom monitors [her] calls," and she can not have social media until she turns 16. Concerned about her mother, Jones also asked her how she knew her mother wouldn't "knock in [sic] [her] door" or "go in [her] room." "Amy" replied that her mother never does and then eventually asked what she and Jones were going to do once they both got to the gas station. Jones texted they were going to have "fun" but that she "already [knew] what they were going to do."
>
>After some time back and forth, Jones wrote "No f*** for you then, when it seemed "Amy" was backing out. After asking if he should still come, "Amy" agreed to meet Jones at the gas station, and Jones replied that he was on his way and that it would "take [him] 37 min."
>
>Once Jones arrived at the gas station, Detective Hansbro and other officers arrested him. Jones was indicted for two counts of child exploitation.

*Jones v. State*, 382 So. 3d 1558, 1561-62 (Miss. Ct. App. 2024); *see also* Doc. # 24-1.

## **Procedural Posture**

Petitioner Corey Antoine Jones, Jr., is currently in the custody of the Mississippi Department of Corrections and housed at the Marshall County Correctional Facility located in Holly Springs, Mississippi. Doc. # 1. August 17, 2022, following a jury trial in the Circuit Court of DeSoto County, Mississippi, Jones was convicted of two counts of exploitation of a child. *See* Doc. # 23-1 at 68, 70-71. The trial court entered two Sentencing Orders (one for each count) on September 28, 2022, in which it sentenced Jones to concurrent terms of eight years followed by five years post-release supervision and further required him to register as a sex offender. *Id.* at 75-85.

Through counsel, Jones filed a direct appeal challenging his conviction and sentence, raising two issues:

(1) The trial court erred in refusing Jones' requested instruction on entrapment; and

(2) The verdicts were against the overwhelming weight of the evidence.

Doc. # 23-6 at 1-24. Jones filed a *pro se* appellant brief raising four additional issues (as described by Jones):

- (3) Fifth Amendment rights violation- the State violated his Fifth Amendment right against self-incrimination by requiring him to admit guilt to assert defense of entrapment and by not timely submitting the FaceTime audio into evidence and by the fact that he was not present when the audio was played before jury;

- (4) Inaccurate/incomplete trial transcript- the transcript was inaccurate as to a conversation between trial counsel and the trial judge regarding whether Jones admitted guilt and incomplete in that it omitted a portion of Jones' testimony and comments by the trial judge;

- (5) Ineffective assistance of trial counsel- trial counsel was ineffective in failing to obtain FaceTime audio, asserting an entrapment defense as it was an admission of guilt, failing to suppress evidence, failing to object to testimony of Detective Hansbro, failing to properly investigate the messages sent to the victim, failing to subject the State's case to adversarial testing, instructing Jones to tell the truth, failing to hire an expert, and failing to request a lesser-included offense instruction; and

- (6) Ineffective assistance of appellate counsel- failing to raise claims and failing to get an audio copy of the trial.

Doc. # 23-6 at 43-82. The Mississippi Court of Appeals affirmed Jones' convictions and sentences in an opinion entered on March 19, 2024. *Jones*, 382 So. 3d 1558; *see also* Doc. # 24-1. In its opinion, the state appellate court addressed all issues raised and found them to be without merit. *See id.*

On May 7, 2024, Jones, proceeding *pro se*, filed an "Application for Leave to Proceed in the Trial Court," along with his "Motion for Post-Conviction Collateral Relief" ("PCR Motion") in the Mississippi Supreme Court. Doc. # 23-7 at 33-65. In his application, Jones presented three arguments which he articulated as follows:

- (1) Ineffective assistance of counsel-trial counsel was ineffective in failing to object to FaceTime audio which was not included in discovery, failing to hold the State to its burden of proof by asserting the entrapment defense, failing to properly prepare and investigate, and failing to object to his testimony being cut short;

4

(2) Perjury- the transcript was cut short and the trial judge's comments were "perjured" from the transcript"; and

(3) Mississippi's exploitation statute is unconstitutional.

Doc. # 23-7 at 33-65. Jones submitted an "Addendum" to his PCR Motion on June 10, 2024, in which he alleged that:

(4) The trial judge didn't authenticate Exhibit 2 (the FaceTime audio);

(5) Counsel failed to object to the FaceTime exhibit; and

(6) Under the discovery rules, his case should be "reversed for a *Brady* violation, due process violation and ineffective counsel for not objecting" to Exhibit 2.

*Id.* at 29-32. On June 27, 2024, the Mississippi Supreme Court denied Jones' application, finding, in pertinent part, as follows:

> After due consideration, the panel finds that the claims of ineffective assistance of counsel fail to meet the standard set out in *Strickland v. Washington* and are without merit. The remaining claims either were raised at trial and in the direct appeal or were capable of being raised in prior proceedings. Those claims are therefore barred. Miss. Code Ann. § 99-39-21. Notwithstanding the bar, the panel finds that those claims are without merit.

*Id.* at 18; *see also* Doc. # 24-2.

Jones filed the instant *pro se* petition for federal habeas corpus relief on July 26, 2024.

Doc. #1. In said petition, Jones asserts the following grounds for relief, as stated by Jones:

> Ground One: Due Process Rights violation. No FaceTime was in my discovery, but jury saw it. Exhibit #2 CD did not contain a FaceTime. At trial, the dispatcher claimed there were 2 items on the CD. That was the dispatcher[']s voice recordings, and a FaceTime. However, the copy my lawyer had only had the dispatcher's voice recordings on it, which is all that shows on Exhibit #2, not my voice.

> Ground Two: Perjury. The transcript does not accurately reflect the end of my testimony. The judge actually asked if I knew of a FaceTime. I told her, no, I don't remember a FaceTime. She called me a liar. They denied my evidentiary hearing of the audio to prove this. This violated my rights to a fair trial, because they never played a FaceTime in open court. They only played it in the back for the jury. That evidence is attached.

5

> Ground Three: I've never seen a FaceTime at all, nor did I do a FaceTime. I raised this issue incorrectly. It is not a Due Process violation, but it is a violation of my rights to a fair trial because Exhibit #2 was never played in open court. It was only marked as an exhibit and played outside the Court. Evidence is attached.
>
> Ground Four: Ineffective counsel. I raised this issue incorrectly. It is not a 6th Amendment violation, but a 14th Amendment violation of my right to effective counsel that the FaceTime is missing from my motion for discovery and exhibit lists, which was also required as part of my Motion for Discovery.

Doc. # 1. Because Jones failed to timely submit the required filing fee, the matter was closed August 21, 2024. *See* Doc. # 11. On October 15, 2024, the Court granted Jones' motion to reopen the case, and, on October 16, 2024, entered an Order directing Respondents to answer Jones' petition. Doc. #s 11, 12. On December 20, 2024, Respondents were granted an extension of time to file an answer to Jones' petition. Doc. # 20. Respondents then filed their response on February 14, 2025, arguing that Jones' petition should be denied with prejudice. Doc. # 24. Respondents specifically contend that the arguments raised in Grounds One, Two and Three are procedurally barred and that arguments raised in Ground Four are without merit. *Id.* Jones filed a reply in support of his petition on March 4, 2025. Doc. # 25.

## Procedural Bar

The Court first considers Grounds One, Two and Three. Jones presented these arguments in his PCR Motion in state court. *See* Doc. # 23-7 at 29-65. The Mississippi Supreme Court held those claims were procedurally barred under Miss. Code Ann. § 99-39-21(3).

"When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal *habeas* is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). The adequacy of the bar applied to Petitioner's claims depends on "whether Mississippi has strictly or regularly applied it." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir.

1997) (citation omitted). Petitioner, however, bears "the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar to claims identical or similar to those raised by the petitioner himself." *Id.*

Section 99-39-21(3) is the res judicata bar of the statute for claims previously decided by the state courts, and it has long been established that "[w]hen a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." *Cone v. Bell*, 556 U.S. 449, 466 (2009); *see also Foster v. Johnson*, 293 F.3d 766, 787 n.12 (5th Cir. 2002). But, because Jones' claims in Grounds One, Two and Three were barred by res judicata, the "look-through" doctrine applies to his claims. *See Wilson v. Sellers*, 584 U.S. 122 (2018) (discussing, 584 U.S. 122 (2018) (discussing *Ylst v. Nunnemaker*, 501 U.S. 797 (1991) and the "look-through" doctrine).

On direct appeal, the Mississippi Court of Appeals barred Jones' claims in Grounds One, Two and Three under the doctrine of waiver. *Jones*, 382 So. 3d at 566-67. More specifically, Jones failed to object to the admission of FaceTime in evidence and the jury's request to listen to the FaceTime audio during deliberations. *Id.* As a result, the issue was waived for failure to lodge a contemporaneous objection. *Id.* It cannot be disputed that "the Fifth Circuit has long held that Mississippi's contemporaneous objection rule is an independent and adequate state procedural bar." *Moffitte v. Huffman*, 2023 WL 4924798, at *3 (S.D. Miss. Jul. 10, 2023), *report and recommendation adopted*, 2023 WL 4919670 (S.D. Miss. Aug. 1, 2023) (citing *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992); *Day v. King*, 2006 WL 1541600, at *4 (S.D. Miss. Aug. 31, 2006) (collecting cases)); *see also Ford v. Hall*, 2022 WL 567851, at * 9 (N.D. Miss. Jan. 28, 2022)

7

(citing *Smith*, 970 F.2d at 1387); *Webber v. Denmark*, 2017 WL 3025880, at *3 (N.D. Miss. Jul. 17, 2017) (citing *Smith*, 970 F.2d at 1387).

Moreover, Jones' failure to "correct, modify, or supplement the transcript" as provided for under the Mississippi Rules of Appellate Procedure resulted in his waiver of the argument that the transcript was incomplete. *See Jones*, 382 So. 3d at 567. Imposition of the waiver bar based on Jones' failure to comply with state rules is likewise an independent and adequate procedural rule that is regularly applied by Mississippi courts. *See, e.g., Kent v. State*, 269 So. 3d 401, 403 (Miss. Ct. App. 2018) (citation omitted) (holding that the "failure to utilize Rule 10(c) 'results' in a procedural bar to raising the issue of an incomplete transcript on appeal'"); *Keller v. State*, 138 So. 3d 817, 836-37 (Miss. 2014) (holding that a challenge to the transcript was procedurally barred based on the "failure to object contemporaneously and failure to follow Rule 10(c)"); *Simmons v. State*, 805 So. 2d 452, 506 (Miss. 2001) (holding that failure to "follow the proper procedure for correcting omissions in the record as set out in [Rule 10(c)] acts as a procedural bar to raising the issue on appeal").

Jones has not carried his burden of proof and shown an "inconsistent and irregular" application of the aforementioned bars. *See Stokes*, 123 F.3d at 861. He has, therefore, defaulted these claims pursuant to independent and adequate state procedural rules. Thus, this Court may review these claims only if Jones can show cause and prejudice, or that a fundamental miscarriage of justice would result from the Court's failure to consider the claims. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

For a finding of cause, "there must be something *external* to the petitioner, something that cannot fairly be attributed to him" which prevented him from raising and discussing the claims as grounds for relief in state court. *Id.* at 753 (emphasis in original). To establish prejudice, a

8

petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). To apply the fundamental miscarriage of justice exception, a petitioner must prove "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citations omitted). Further, he must support his allegations with new, reliable evidence, that was not presented at trial, and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 644 (citations omitted).

In his reply, Jones repeats the arguments from his petition and opine that they meet the "cause and prejudice" standard. *See* Doc. #25. In particular, Jones alleges that the State and witness "lied" about the FaceTime audio of his voice—that it was not included on the CD produced during discovery nor was it properly admitted into evidence. *Id.* To be clear, Jones' arguments as to "cause and prejudice" are essentially the same arguments raised in his grounds for relief. He has not identified any external action which prevented him from presenting these claims to the trial court or on direct appeal. *See Coleman*, 501 U.S. at 750. Moreover, Jones has not proven that, as a factual matter, he did not commit the crime(s) of exploitation of a child, nor has he presented any new, reliable evidence that would show that, "more likely than not [] no reasonable juror would have convicted him in light of the new evidence." *See Fairman*, 188 F.3d at 644. Accordingly, Jones' claims raised in Grounds One, Two and Three are procedurally barred from federal habeas review.

### **The Merits**

Turning to Jones' remaining claim, Ground Four, the Mississippi Supreme Court's merits determination limits this Court's authority to grant federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a federal court cannot grant

9

habeas relief on any claim that the state court adjudicated on the merits unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) and (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the state court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause is reserved for decisions that either fail to identify the correct governing law, or identify the correct governing law but misapply it to the case. *Id.* at 407. Under this standard, a state court's decision will not warrant federal habeas relief unless its application is both incorrect *and* unreasonable. *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004)(emphasis in original)(citation omitted). When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

In Ground Four, Jones argues that trial counsel was ineffective because the "FaceTime [was] missing from [his] motion for discovery and exhibits list." Doc. # 1 at 9, 16. The Court liberally construes this to encompass a claim that counsel was ineffective in failing to object to the admission of the FaceTime evidence and to the timing of when the FaceTime audio was played for the jury. Jones *seemingly* believes that the FaceTime audio was missing from discovery because the "Exhibits list" from his trial does not reflect a FaceTime audio but instead is identified as "C.D. Dispatcher's Voice." Doc. # 1 at 14, 19-21. Jones further contends that the "copy [his]

lawyer had only contained the dispatcher's voice recordings" but not the FaceTime. Doc. # 1 at 14. He additionally points to counsel's Motion for Discovery, filed before trial, which stated that "without production of the documents referred to above, [] counsel [would] not be able to effectively represent [Jones]." Doc. # 1 at 16, 20.

Jones initially presented a "variety" of ineffective assistance of counsel claims in his direct appeal, but the Mississippi Court of Appeals dismissed those claims without prejudice to be raised in post-conviction proceedings if necessary. *Jones*, 362 So. 3d at 567. In his PCR motion, Jones asserted an ineffective assistance of counsel claim, and raised the same argument(s) as he does now in Ground Four. *See* Doc. # 23-7. In particular, Jones alleged that "trial counsel was ineffective in failing to object to FaceTime audio which was not included in discovery."[1] *See id.* at 29-65. And, as noted above, the Mississippi Supreme Court found Jones' "claims of ineffective assistance of counsel fail[ed] to meet the standard set out in *Strickland v. Washington* and [were] without merit." Doc. # 23-7 at 18; *see also* Doc. # 24-2.

Claims for ineffective assistance of counsel are governed by the standard set forth in *Strickland*,[2] which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas relief: (1) demonstrate constitutionally deficient performance by counsel, and (2) actual prejudice as a result of such ineffective assistance. The "deficiency" prong requires a showing that counsel's performance fell below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687-88. A court's scrutiny must be highly deferential of counsel's performance, so as to "eliminate the distorting effects of hindsight." *Motley v. Collins*, 18 F.3d

---

[1] Jones raised a number of arguments in support of his ineffective assistance of counsel claim, but no others are relevant for purposes of this opinion and he does not raise those additional arguments in the instant federal habeas petition. *See* Doc. #s 23-7, 1.
[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

11

1123, 1126 (5th Cir. 1994). Thus, courts review an attorney's decision based upon the facts and circumstances as they existed at the time. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1986). Moreover, there is a strong presumption that counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813 (5th Cir. 1986).

Under the "prejudice" prong, the petitioner must demonstrate, to a reasonable probability, that the result of the proceedings would have been different but for the alleged conduct, or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995); *see also Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 562 U.S. 86, 112 (2011). An error by counsel, even if professionally unreasonable, does not warrant habeas relief if the error had no effect on the judgment. *Summit v. Blackburn*, 795 F.2d 1237, 1242 (5th Cir. 1986). There is no constitutional entitlement to error-free representation. *Washington v. Watkins*, 655 F.2d 1346, 1367 (5th Cir. 1981).

On habeas review, the issue for the reviewing court is not whether the *Strickland* standard is met, but rather, whether the state-court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington*, 562 U.S. at 105 ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a state court, a petitioner "must demonstrate that it was necessarily unreasonable for the [state] Supreme Court" to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). The standard for ineffective assistance of counsel claims is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S.

111, 113 (2009), requiring district courts to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 578 U.S. 113, 117 (2016).

As noted above, Jones asserts a claim for ineffective assistance of trial counsel, contending that the FaceTime audio was missing from discovery and the exhibits list and that counsel failed to object to the FaceTime audio being played in court. Though true that the "Exhibits" list from trial states "CD-Dispatcher's Voice" and does not specifically use the term "FaceTime" audio, *see* Doc. # 23-1 at 65, Jones' assertions are otherwise not supported by or contrary to the record. The "Exhibits" list is simply a catalog of exhibits introduced at trial and summarized the evidence received by the Court. The entry for "CD-Dispatcher's Voice" accurately described the CD's contents as it contained two audio recordings and a FaceTime Audio *with the dispatcher's voice*.

The trial transcript further reflects that the police dispatcher Makala Davis testified that she assisted investigators in the case and was the person speaking on the voice recordings and FaceTime audio contained on the CD marked as Exhibit 2. Doc.# 23-2 at 58. She also confirmed that these recordings "fairly and accurately depict the voice recordings and the FaceTime that was used [in] this case." *Id.* at 59. The CD containing both the audio and FaceTime recordings was then marked as an exhibit, admitted into evidence as Exhibit 2, and made part of the record without objection. *Id.* Exhibit 2 was available to the jury during deliberations and, without objection, the trial court provided the jury with equipment to listen to the FaceTime audio from Exhibit 2 at their request. Doc.# 23-3 at 94-96.

Nothing in the record supports Jones' allegations that his counsel received a CD containing only recordings of the dispatcher's voice but did not receive the FaceTime audio (during discovery). The record actually indicates that counsel was aware of the FaceTime audio recording as he made no objection to admission of the evidence at trial nor to the jury listening to it during

13

their deliberations. *See* Doc. #23-2 at 59; Doc. # 23-3 at 94-96; *see also Jones*, 382 So. 3d at 567. Moreover, Jones filed with this Court a copy of the CD introduced at trial as Exhibit 2 and it contains both the audio recordings of the dispatcher's voice and the FaceTime audio with the dispatcher's and Jones' voices refuting his contention that the exhibit introduced at trial and provided during discovery did not contain the FaceTime recording. *See* Doc. #s 16, 17.

Additionally, the recordings, including the FaceTime audio, were properly admitted into evidence. *See Jones*, 382 So. 3d at 567 (explaining that the FaceTime audio undisputedly capturing Jones speaking was not hearsay but instead "an admission by a party opponent and was properly allowed"); *see also* Doc. # 23-2 at 59 (properly authenticated CD containing audio recordings and FaceTime audio was marked as an exhibit for evidence and made part of the record without objection). The record evinces no basis upon which Jones' trial counsel could have objected to the introduction and admission of the FaceTime audio nor to it being played for the jury. As such, it cannot be said that counsel was "deficient" in failing to lodge an objection. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.").

Even assuming, *arguendo*, that Jones had demonstrated that trial counsel's failure to object regarding the FaceTime audio did constitute deficient performance, he has failed to show that he was actually prejudiced by the failure to object in this instance. The State introduced ample message threads between Jones and "Amy" on both the app and Jones' personal phone, and Jones was arrested at the place where he arranged to meet "Amy" during those conversations. *See Jones*, 352 So. 3d at 561-62; *see also generally* Doc. #s 23-2, 23-3. Thus, even had counsel objected to the FaceTime audio *and* the objection been sustained, the State presented a plethora of additional evidence to support the conviction. As such, Jones wholly failed to demonstrate that the result of

14

the proceedings would have been different but for counsel's failure to object, nor that counsel's failure to object rendered the result of the proceeding fundamentally unfair or unreliable. *See Vuong*, 62 F.3d at 685; *see also Strickland*, 466 U.S. at 687.

Upon due consideration, the Court finds Jones' claim for ineffective assistance of trial counsel without merit. Jones has failed to show deficient performance by counsel. Even had he shown deficient performance by counsel, Jones has likewise failed to demonstrate that he was prejudiced in any way by counsel's alleged actions and/or inactions. As such the Court finds that Jones is not entitled to federal habeas relief on Ground Four.

### **Evidentiary Hearing Unnecessary**

In his "addendum" to the petition, Jones requests an evidentiary hearing, but the Court finds that such a hearing is not warranted on the circumstances presented. A federal habeas corpus proceeding is not meant to determine a petitioner's guilt or innocence, nor to retry his case; instead, resolution of the proceeding determines *only* whether the petitioner's constitutional rights have been violated. *Herrera v. Collins*, 506 U.S. 390, 400-01 (1993)(citations omitted); *Ellis v. Collins*, 956 F.2d 76, 78 (5th Cir. 1992). Consequently, facts found in a habeas corpus evidentiary hearing must bear on whether the trial or appeal of the criminal case violated the petitioner's constitutional rights. Given the clarity of the record before the Court, a hearing is not necessary to rule on Jones' petition.

Title 28 U.S.C. § 2254(e)(2) sets the standard for determining whether an evidentiary hearing is necessary – and states that a federal court may *not* hold an evidentiary hearing on claims that a petitioner *could* have developed in state court proceedings – unless two criteria are met. First, the claim must rely on a new rule of constitutional law, expressly made retroactive to cases on collateral review. 28 U.S.C. § 2254(e)(2)(A). Second, an evidentiary hearing is appropriate

15

when the factual predicate for the claim could not have been previously discovered with *due diligence*. *Id.* If those criteria are met, the petitioner must then show that the proffered facts underlying the claim "would be sufficient to establish *by clear and convincing evidence* that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B) (emphasis added).

Jones has not shown that, under the requirements of 28 U.S.C. § 2254(e)(2), he would be entitled to an evidentiary hearing. In fact, he has made no substantive argument in support of his request for a hearing. Jones' claims raised in Grounds One, Two, and Three are procedurally barred, and his claim raised in Ground Four is without merit. *See Guillory v. Cain*, 303 F.3d 647, 649-50 n.5 (5th Cir. 2002)(noting the restrictive nature of evidentiary hearings under 28 U.S.C. § 2254(e)). As the facts in the record clearly support these conclusions, an evidentiary hearing would be superfluous. For these reasons, Jones has not shown that an evidentiary hearing is warranted under 28 U.S.C. § 2254(e)(2) and Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts.

## **Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability ("COA") upon the entry of a final order adverse to the petitioner, and Jones must obtain a COA before appealing this Court's decision denying federal habeas relief. *See* 28 U.S.C. § 2253(c)(1). This Court may only grant a COA if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA for claims rejected on their merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For

claims rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" in order for a COA to issue. *Id.* Applying this standard, the Court concludes that a COA should be denied.

## Conclusion

Based on the foregoing discussion, the Court finds that Jones' claims raised in Grounds One, Two, and Three are procedurally barred from review. The Court further finds that Jones has failed to demonstrate that the State court adjudication of his claim raised in Ground Four—ineffective assistance of counsel—resulted in a decision contrary to, or involving an unreasonable application of, clearly established Supreme Court precedent, nor that the decision was based on an unreasonable determination of facts in light of the evidence presented. Accordingly, habeas relief is **DENIED**, and Jones' petition is hereby **DISMISSED WITH PREJUDICE**. The Court further **DENIES** a certificate of appealability. A separate judgment in accordance with this opinion and order will enter this day.

**SO ORDERED**, this the 28th day of April, 2025.

**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**